UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

SUSAN DESKINS,

    Plaintiff,

v.                                        CASE NO.  8:08-cv-116-T-23MSS

SARASOTA COUNTY, et al.,

    Defendants.

_____/

**ORDER**

Susan Deskins ("Deskins"), individually and as the personal representative of her son Stephen Michael Bongiorno ("Bongiorno"), sues (1) Sarasota County, Florida ("the County"); (2) the Sarasota County Sheriff's Office ("the Sheriff's Office"); (3) William F. Balkwill ("Sheriff Balkwill"), the elected sheriff of Sarasota County, individually and in his official capacity; and (4) Deputy Gabriel Eckert ("Deputy Eckert"), individually and in his official capacity. Deputy Eckert moves (Doc. 19) to dismiss Counts I, II, and III of the seven-count amended complaint for failure to state a claim. The County, the Sheriff's Office, and Sheriff Balkwill move (Doc. 20) to dismiss Counts II through VII of the amended complaint for failure to state a claim. Deskins opposes both motions (Docs. 21, 23).

In evaluating the sufficiency of a complaint, the court "must accept the well-pleaded facts as true and resolve them in the light most favorable to the plaintiff." Beck

v. Deloitte & Touche, 144 F.3d 732 (11th Cir. 1998) (citing St. Joseph Hospital Inc. v. Hospital Corp. of Am., 795 F.2d 948 (11th Cir. 1986)). Under the notice pleading standard of the Federal Rules of Civil Procedure, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true." Bell Atl. Corp. v. Twombly, 127 S. Ct. 1955, 1964-65 (2007). However, neither a conclusory allegation nor "a legal conclusion couched as a factual allegation" provides support for the sufficiency of a complaint. Papasan v. Allain, 478 U.S. 265, 286 (1986); see also South Fla. Water Mgmt. Dist. v. Montalvo, 84 F.3d 402, 408 n.10 (11th Cir. 1996).

### Factual Allegations

In her amended complaint, Deskins alleges that at approximately 1:00 AM on November 1, 2006, Deputy Eckert, while on duty as a deputy for the Sheriff's Office, noticed a Jeep Cherokee parked at a shopping center in Sarasota, Florida. Deputy Eckert noticed a man, later identified as Bongiorno, "slumped over" in the passenger seat of the vehicle. (Doc. 16, ¶ 20) Deputy Eckert approached the vehicle and "noticed mucus oozing from [Bongiorno's] nose." (Doc. 16, ¶ 22) Deputy Eckert tapped on the passenger window of the vehicle, but Bongiorno failed to respond. (Doc. 16, ¶ 21) Deputy Eckert assumed that Bongiorno was "just drunk" and left the scene without attempting "to bring [Bongiorno] to safety," without attempting "to prevent [Bongiorno] from being placed in a worse situation," and without calling for medical attention for Bongiorno. (Doc. 16, ¶ ¶ 23, 24) Deskins alleges that Deputy Eckert "failed to properly assess the situation, call for medical attention, pull on the door handles, or take any

action to gain entry to the vehicle, or to aid or further assess [Bongiorno's] physical condition."  (Doc. 16, ¶ 26)   As he left the scene, Deputy Eckert "commented in a digital transmission, 'you should see this one . . . he is closer to dead . . . sitting in the passenger seat."  (Doc. 16, ¶ 25)

Approximately six hours later, another police officer, Officer Church, arrived at the shopping center.  Paramedics were present when Officer Church arrived, but Officer Church noted that Bongiorno was in the passenger seat of the vehicle with an open cell phone on his lap.  When Officer Church arrived, the doors to the vehicle were closed but unlocked.  The paramedics pronounced Bongiorno dead at 7:06 AM that morning.  (Doc. 16, ¶ 33)

Deskins alleges that, upon reevaluating the incident, Deputy Eckert admitted that he was negligent and that he should have pulled on the door handle or been "more assertive" in determining Bongiorno's condition.  (Doc. 16, ¶ 40)  Deskins alleges that Deputy Eckert was "removed from the Canine Unit and transferred into patrol as a result of his wanton actions and negligent behavior regarding [Bongiorno's] need for immediate medical attention."  (Doc. 16, ¶ 34)  Deputy Eckert was also cited for "Neglect of Duty" and "Conduct Unbecoming" in violation of the Sarasota County Sheriff's Office's General Orders and Rules.  (Doc. 16, ¶ ¶ 35 - 39)

## Discussion

As a preliminary matter, under Florida law, a sheriff's department lacks a separate legal identity apart from the county and is not an entity subject to suit.  Post v. City of Fort Lauderdale, 750 F. Supp. 1131, 1132-33 (S.D. Fla. 1990); Florida City Police Dept.

v. Corcoran, 661 So. 2d 409, 410 (Fla. 3d DCA 1995); see also Dean v. Barber, 951 F.2d 1210, 1214 (11th Cir. 1992) ("Sheriff's departments and police departments are not usually considered legal entities subject to suit . . . but 'capacity to sue or be sued shall be determined by the law of the state in which the district court is held.'" (internal citations omitted)).  Accordingly, the "Sarasota County Sheriff's Office" is **DISMISSED** as a party to this action.

## Federal Claims

Counts V, VI, and VII of the amended complaint assert claims pursuant to 42 U.S.C. § 1983 against (1) Sheriff Balkwill in his individual and official capacities, (2) the Sheriff's Office, and (3) the County.  Deskins alleges that Deputy Eckert deprived Bongiorno of his Fourteenth Amendment rights by failing to procure medical care for Bongiorno after discovering him slumped over in a vehicle.  Count V alleges that Sheriff Balkwill and the County are liable for Deputy Eckert's failure to provide medical care because the defendants failed to implement "a clear written policy upheld by their deputies to provide medical care when the immediate need for medical attention is present."  (Doc. 16, ¶ 106) Count VI alleges that the defendants violated Bongiorno's Fourteenth Amendment rights by failing to train Deputy Eckert about "the health risks associated with failing to provide immediate medical attention" and about how to respond to "a severe medical condition or possible drug overdose."  (Doc. 16, ¶¶ 118-19) Count VII alleges that the defendants violated Bongiorno's Fourteenth Amendment rights by ratifying Deputy Eckert's actions "and the reasoning behind them."  (Doc. 16, ¶ 139)

Section 1983 provides an action for damages against any person who, under color of state law, deprives another person of "any rights, privileges, or immunities secured by the Constitution and laws." 42 U.S.C. § 1983. Thus, to withstand a motion to dismiss, a plaintiff must allege that his constitutional rights have been violated as a result of some action taken under color of state law. In this case, Deskins alleges that the defendants violated Bongiorno's Fourteenth Amendment rights.

Although in many cases, the conduct of government officials may violate both the Constitution and state tort law, the Supreme Court has limited the availability of § 1983 claims alleging violations of the Fourteenth Amendment right to due process. "As a general matter . . . a state's failure to protect an individual against private violence simply does not constitute a violation of due process." DeShaney v. Winnebago County Dept. of Soc. Servs., 489 U.S. 189, 197 (1989). The fact that "law enforcement officers have authority to act does not imply that they have any constitutional duty to act." McKee v. City of Rockwall, 877 F.2d 409, 414 (5th Cir. 1989). The government has a duty to act only if the government creates the danger or if the person is in government custody. See Wooten v. Campbell, 49 F.3d 696, 699-701 (11th Cir. 1995); Powers v. CSX Transp., Inc., 188 F. Supp. 2d 857, 861-63 (S.D. Ala. 2002). No constitutional liability exists if "the State actors 'had no hand in creating a danger but simply stood by and did nothing when suspicious circumstances dictated a more active role for them.'" Butera v. Dist. of Columbia, 235 F.3d 637, 650 (D.C. Cir. 2001) (quoting Reed v. Gardner, 986 F.2d 1122, 1125 (7th Cir. 1995)).

In this case, the amended complaint asserts, in Counts V, VI, and VII, that Bongiorno's Fourteenth Amendment rights were violated. This blanket assertion is insufficient to allege a constitutional violation. See Papasan v. Allain, 478 U.S. 265, 286 (1986). Deskins alleges that Deputy Eckert discovered Bongiorno slumped over in a car, knocked on the window of the vehicle, and left the scene. Bongiorno's death is tragic, but the complaint fails to allege any fact showing that Bongiorno was in custody or that Deputy Eckert affirmatively created any danger to Bongiorno. See, e.g. Estate of Stephens v. City of Green Bay, 105 F.3d 1169, (7th Cir. 1997) (finding that a police officer, who briefly arrested an intoxicated person and left the person on the street, committed no constitutional violation and was not liable for the person's death); Tucker v. Callahan, 867 F.2d 909 (6th Cir. 1989) (finding that a police officer, who witnessed a man's assault but failed to intervene or render medical assistance, committed no constitutional violation). Accordingly, Counts V, VI, and VII of Deskins's amended complaint are **DISMISSED**.

Dismissal of Deskins's § 1983 claims, the sole basis for federal jurisdiction over this lawsuit, eliminates subject matter jurisdiction over Deskins's remaining claims. See 28 U.S.C. § 1367(c)(3). Accordingly, this action is **REMANDED** to the Circuit Court for Sarasota County, Florida. See 28 U.S.C. § 1447(c); Page v. City of Southfield, 45 F.3d 128, 133 (6th Cir. 1995).

In sum, Sheriff Balkwill's motion (Doc. 20) to dismiss is **GRANTED IN PART**. The Sarasota County Sheriff's Office is **DISMISSED** as a party to this action. Counts V, VI, and VII of Deskins's amended complaint (Doc. 16) are **DISMISSED**. This action is

- 7 -

**REMANDED** to the Circuit Court for Sarasota County, Florida.  The Clerk is directed to (1) terminate any pending motion and (2) close the case.

ORDERED in Tampa, Florida, on September 8, 2008.

_____
STEVEN D. MERRYDAY
UNITED STATES DISTRICT JUDGE

Case 8:08-cv-00116-SDM-MSS   Document 24   Filed 09/08/08   Page 7 of 7 PageID 181

- 7 -